CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California 95112
Telephone: (408) 295-9555
Facsimile: (408) 295-6606

ATTORNEYS FOR Debtor
Integrated Packing Assembly Corporation
dba IPAC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | Case No. 07-53563 ASW |
| INTEGRATED PACKING ASSEMBLY CORPORATION, dba IPAC, | CHAPTER 11 |
| Debtor. | Date: November 9, 2007<br>Time: 1:30 p.m.<br>Place: United States Bankruptcy Court<br>280 S. First St. Room 3020<br>San Jose, CA 95113<br>Judge: Hon. Arthur S. Weissbrodt |

**OPPOSITION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR ORDER DIRECTING THE DEBTOR TO SURRENDER REAL PROPERTY**

Debtor Integrated Packaging Assembly Corporation ("Debtor" or "IPAC") submits this opposition to the expedited Motion For Relief From Automatic Stay And For Order Directing The Debtor To Surrender Real Property filed by Old Oakland Road Associates, LLC. ("OORA" or "Movant") ("Motion") as follows:

**I. Introduction And Summary Of Response:**

Debtor opposes OORA's expedited Motion on the grounds it maintains a possessory and equitable right to continued occupancy of the subject real property, OORA has not provided Debtor or this Court with sufficient evidence of its demand and need for an

immediate surrender, Debtor seeks a full evidentiary hearing after expedited discovery, and a surrender of the subject real property to OORA before Debtor's new facility is ready for occupancy and operation, may subject Debtor to imminent and potentially permanent closure, significant loss of its ongoing value, significant risk of falling out of compliance with outstanding contracts, loss of customers and employees, loss of the very existence of the business, layoff of employees, cancellation of existing contracts, refusal of potential new business, and severely jeopardize Debtor's ability to continue as an ongoing concern, put forth a confirmable plan of reorganization, and provide any recovery to creditors.

**II. Factual Background:**

    **A. Background Of Debtor's Business.**

Debtor is a valid California corporation. Victor Batinovich is Debtor's President and Chief Executive Officer.

Debtor's current business commenced in approximately September 2003 when it purchased assets from a subsidiary of OSE USA, Inc. Debtor's business is primarily packaging (chip assembly) and testing of semiconductors. Debtor's business is highly technical, requires the use of technical labor and sophisticated equipment, and requires a controlled environment and clean rooms. Debtor's customer base includes both government and non-government business both domestically and internationally.

Debtor currently employees approximately fifty five (55) full time employees, most of which are technically trained and skilled employees with various degrees and with specified training and experience operating and maintaining Debtor's technical equipment. Many of Debtor's employees have been employed by Debtor, or Debtor's predecessors, for ten or more years. Debtor's business is generally in operation on a sixteen hour day with approximately one week a month allocated to two twelve four hour shifts. Debtor's average monthly payroll is approximately $150,000.

Debtor's monthly revenue was, prior to the last few months, approximately $ 470,000.

Since approximately, July 2007, revenue has decreased approximately fifty percent. The decrease in revenue is a result of many factors, including but not limited to, not taking on new business or orders due to quality control issues related to various facility equipment failures, material losses related to these conditions (yield losses to customers' consigned chips), contractual compliance, and health and safety issues which relate directly to the deplorable condition of the Premises as well as OORA's threats for eviction.

Debtor's has significant assets, primarily highly technical equipment used in the assembly and testing of semiconductors. Single pieces of equipment have a replacement cost of approximately $1,000,000. The estimated replacement value of Debtor's equipment is approximately $ 45,000,00 and the estimated liquidation value of between $10,000,00 and $15,000,000. These estimates are based on a valuation done within the last two years as part of a potential joint venture.

Debtor's equipment is highly sensitive to temperature and moisture, both during operation and when not in operation. Generally, Debtor's equipment must operate at a constant temperature and humidity, with less than a one degree variance. Some of Debtor's equipment must be powered down in an orderly fashion to preserve its integrity. If some of Debtor's equipment is to be placed out of operation for more than 24-48 hours, special precautions must be taken to eliminate the risk of moisture and rust, both of which may cause permanent damage.

Debtor has numerous competitors throughout the world. Generally, once a customer and the customer's business is lost to a competitor it is virtually impossible to regain business from that customer.

**B. Debtor's Lease Of The Subject Premises**.

On or about September 1, 2003, Debtor entered into a lease of approximately 63,000 square feet at the premises of 2221 Old Oakland Road, San Jose, CA (the "Premises") from Joseph A. Sully. The Premises is a commercial facility consisting of approximately 85,000

square feet of which Debtor occupies the first floor and OSE USA, Inc., a separate and distinct entity, occupies the second floor, which consists of approximately 25,000 square feet. Debtor currently occupies less than one half of its portion of the Premises. At this time Debtor cannot confirm whether Hazardous Material Use Permit exists in Debtor's name.

On or about October 10, 2006, OORA purchased the Premises, subject to Debtor's lease, from Great West Life & Annuity Company ("Great West"), the successor of Canada Life Assurance Company, which had acquired the Premises in foreclosure. The Lease was assigned to OORA by Great West pursuant to an Assignment And Assumption Of Leases. Debtor's lease was for an original term through August 31, 2008.

At or about the time of OORA purchased of the Premises, it had environmental inspections and testing done outside the Premises. These inspections and testings took several weeks and the inspectors/testors had full access to the Premises while Debtor continued its operation. At the time of these inspections/testings, Debtor occupied a greater percentage of the Premises and had a greater volume of business. These inspections/testing progressed over several days without any interruption of Debtor's business.

Shortly after OORA's purchase of the Premises, Debtor initiated state court litigation in great part, to the address the deplorable condition of the Premises, OORA's refusal and failure to maintain and repair the Premises, including but not limited to leaking ceilings, leaking floors, loose floor tiles, and inoperable air conditioning cooling units, and other facility equipment, and improperly demanded excessive rent. Debtor's business was at constant risk due to the deplorable conditions of the Premises and OORA's and its predecessors' failure and refusal to rectify the problems.

In response to Debtor's complaints and state court litigation, OORA initiated formal efforts to evict Debtor from the Premises. After months of litigation, Debtor and OORA entered into negotiations to resolve these issues. On July 26, 2007, a Memorandum of

OPPOSITION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR ORDER DIRECTING THE DEBTOR TO SURRENDER REAL PROPERTY
4
Case: 07-53563   Doc# 16   Filed: 11/08/07   Entered: 11/08/07 14:37:16   Page 4 of 12

Settlement was executed whereby the Debtor would dismiss its state action, the Debtor would agree to entry of a judgment for possession of the Premises, Debtor could occupy the Premises through and including October 31, 2007, and OORA would not enforce the judgment of possession until November 1, 2007. This Memorandum of Settlement was reduce to a formal Settlement Agreement, executed on October 10, 2007 by Debtor and October 17, 2007 by OORA.

**C. Debtor's New Facility.**

As a result of Debtor's dealings with OORA and the Premises, it proceeded with a diligent search and inspection of dozens of commercial properties for a commercial property which could satisfy its specific and special needs electrical and power needs and could satisfy Pacific Gas & Electric's approval process. Debtor's electrical requirements, including air conditioning and cooling, are critical to Debtor's business and any interruption of electricity, air conditioning, or cooling severely jeopardizes Debtor's equipment, Debtor's product and production, revenue, business contract and clients, and existence.

In approximately August 2007, Debtor signed a lease for a new facility in Fremont, California. Debtor's Fremont landlord could not satisfy Debtor's time line for completion of the required build out. Therefore, Debtor hired its own contractors to ready the Fremont facility for occupancy by Debtor. Debtor has committed to spend approximately $600,000 to ready the Fremont facility for occupancy. Debtor's contractors have a deadline of November 30, 2007.

**D. Debtor's Negotiations With OORA.**

Over the last few weeks and prior to Debtor filing the petition for bankruptcy, at the instruction of Debtor, Debtor's counsel attempted to address and explain Debtor's logistical situation with OORA between moving out of the Premises and into its new Fremont facility of the Premises, including the ability to continue occupancy for several more weeks and monetary assurances. These efforts continued up through the evening of October 31, 2007,

without any positive response from OORA.

Post petition, at the instruction of the Debtor, Debtor's counsel again attempted to address Debtor's current logistical situation between moving out of the Premises and into its new Fremont facility. These efforts did not receive any positive response from OORA.

At all times Debtor made OORA aware of its efforts and potential consequences of terminating Debtor's occupancy prior Debtor's new facility being ready and Debtor moving into and occupying the new facility.

**E. Debtor's Petition For Chapter 11 Bankruptcy.**

On October 31, 2007, Debtor filed an emergency voluntary petition under chapter 11 of Title 11 of the United States Code, commencing the instant action. Debtor has not set forth a plan of reorganization having filed the emergency petition in an effort to protect itself from imminent and potentially permanent closure, preserve the ongoing value and existence of the business, not fall out of compliance with outstanding contracts, and preserve the very existence of the business. The Debtor is currently in consideration and preparation of a plan of reorganization that would allow it to move to its Fremont facility and make payments to creditors. Debtor is hopeful such a plan will be filed within the current plan exclusivity period.

**F. OORA's Post Petition Eviction of Debtor.**

On November 1, 2007, the Santa Clara County Sheriff and OORA, notwithstanding notice of the bankruptcy filing, proceeded to enforce the judgment of possession by demanding Debtor's employees, under threat of arrest, stop working and leave the Premises. Debtor's employees were in production and were not allowed to stop production in proper form and power down the equipment. Debtor has not determined the resulting damage caused by OORA and the Santa Clara County Sheriff's November 1, 2007, actions. Debtor was subsequently allowed back into the Premise by OORA.

**G. Consequences Of An Early Surrender Of The Premises.**

If Debtor is forced to surrender the Premises before its new facility is ready for occupancy and operation, Debtor may be subject to imminent and potentially permanent closure, significant loss of its ongoing value, significant risk of falling out of compliance with outstanding contracts, loss of customers and employees, and loss of the very existence of the business.

In addition, if Debtor is forced to surrender the Premises before its new facility is ready for occupancy and operation, Debtor may have to layoff its employees, cancel existing contracts, refuse potential new business, advise customers that it cannot comply with existing contractual deadlines, and expose itself to potential claims by customers. The potential financial consequences of a forced surrender of the Premises before Debtor's new facility is ready for occupancy and use are so significant as to be a direct threat to the ability to continue as an ongoing concern and provide any recovery to creditors.

**H. Continued Occupancy Of The Premises By OSE USA, Inc.**

Prior to November 6, 2007, Debtor was informed by Joseph A. Sully, former owner of the Premises, that OSE USA, Inc.'s lease for the second floor portion of the Premises would expire in February 2008.

On November 7, 2007, Mr. Rabinovich, on behalf of the Debtor met with counsel for OSE, USA, Inc. Antonio Garcia and the general counsel for OSE USA, Inc. and they both confirmed that OSE USA, Inc.'s lease was scheduled to expire in February 2008, OSE USA, Inc. has not been asked to or agreed to vacate the Premises, there was not any formal action by or agreement with OORA to remove OSE USA, Inc. from the Premises, and OSE USA, Inc. was likely to occupy the Premises at least through the end of 2007.

**I. The Premises Is Not Ready For Occupancy By A New Tenant.**

Due to the deplorable conditions at the Premises, which have lasted for months and years, including leaking ceilings, leaking floors (ground water leaking through the floor),

loose floor tiles, and inoperable air conditioning and cooling units, Debtor does not believe the Premises could be rented to a new tenant absent months of repairs.

**III. Argument:**

**A. OORA's Application For Relief From The Automatic Stay And Immediate Surrender Of the Premises Should be Denied As Debtor Maintains A Possessory and Equitable Right To Continued Occupancy of the Subject Real Property.**

Debtor maintained a possessory and equitable right to continued occupancy of the Premises at the time the petition was filed on October 31, 2007. Pursuant to Debtor's agreement OORA, debtor had the right of possession and occupancy at least through November 1, 2007.

The lease may not be considered ended until the tenant has no legal recourse to revive the lease (Ross v. Metropolitan Dade County, 142 Bankr. 1013,(S.D. Fla. 1992, aff'd without op., 987 F.2d 774 (11th Cir. 1993) (leases considered terminated when both the lease termination process has been completed and no anti-forfeiture laws can still save the lease))

Whether Debtor's rights are terminated for purposes of Section 365 is a question of fact pursuant to state law and in particular, resolution of Debtor's exercise of rights under California's anti-forfeiture law. (In re Windmill Farms, Inc. 841 F.2d 1467, 1469 (9th Cir. 1988)). In California, this involves a two part inquiry: First, wether the lease terminated before the bankruptcy petition was filed; second, whether the termination could have been reversed under California's anti-forfeiture provision, Id., at 1472. Under the first inquiry, Debtor maintains its agreements with Moving Party extended it lease rights at least through and including October 31, 2007. If the lease has been terminated but the Debtor moves to assume the lease; a second inquiry is made: can the debtor succeed in reversing termination under California Code of Civil Procedure Section 1179 ("CCP"). (In re Windmill Farms, Inc. 841 F.2d at 1472. The rationale for the second inquiry is to afford a debtor the same rights it had under state law without regard to its bankruptcy filing. In re Waterkist Corp.,

775 F.2d 1089, 1091 (9th Cir. 1985); <u>In re Windmill Farms, Inc.</u>, 841 F.2d 1467, 1472 (9th Cir. 1988) California law abhors forfeiture of a leasehold interest. (<u>In re Eureka Souther R.R., Inc.</u> 72 B.R. 813, 817 (Bankr. N.D. Cal. 1987)

CCP 1179 provides, in pertinent part:

The court may relieve a tenant against forfeiture of a lease or rental agreement, whether written or oral, and whether or not the tenancy has terminated, and restore him or her former estate or tenancy, in case of hardship, as provided in section 1174 . . . An Application for relief against forfeiture may be made at any time prior to restoration of the premises to the landlord . ."

Therefore, the determination of Debtor's leasehold interest in the Premises is premature absent a decision by Debtor to assume or reject its leasehold interest and pursue its rights anti-forfeiture rights under California law and a evidentiary hearing on such potential actions.

**B. Debtor Is Entitled To A Full Evidentiary Hearing After Expedited Discovery.**

Debtor is entitled to a full evidentiary hearing on the issues asserted by OORA after expedited discovery. OORA's Motion contends "The Debtor's continued occupancy and possession of the premises jeopardizes a sale of the property pursuant to an agreement OORA has executed with a buyer and which must close on or before December 20, 2007. To close, OORA must be able to deliver the premises vacant which it cannot do if the Debtor is still in possession. OORA must also contain the necessary environmental clearances by governmental agencies which cannot begin until the building is vacant and which requires a 30 day process . ." (Motion, page 2, lines7-12)

The Motion does not include a sales contract or declaration from the potential buyer or the significance of the closing date. Debtor wishes to conduct expedited discovery to the buyer and OORA's declarant regarding this proposed sale agreement, the alleged closing date, OORA's claim the Premises must be delivered vacant, and Debtor's and OSE USA, Inc.'s continued occupancy of the Premises.

**OPPOSITION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR ORDER DIRECTING THE DEBTOR TO SURRENDER REAL PROPERTY**
9

The Motion also does not explain or address OSE USA, Inc.'s continued occupancy and continued right of occupancy through February 2008. OSE USA, Inc.'s continued occupancy of the Premises would appear to render OORA's purported sale, vacant delivery, and closing date unlikely events.

The Motion also relies on a "proposal" (not a contract) from geologica, a proposal dated November 1, 2007, the day after this bankruptcy was commenced. Although Debtor cannot confirm at this time if it holds a Hazardous Material Use Permit for the Premises, as stated above, OSE USA, Inc.'s continued occupancy of the Premises would appear to render geologica's "proposal" premature. Further, the inspections/testings done approximately one year ago were done while Debtor occupied a greater percentage of the Premise and the inspections/testings did not interfere with Debtor's business.

**C. The Court Should Deny The Expedited Motion Through Its Equitable Powers.**

The Motion Seeks expedited relief from stay pursuant to Section 362 (d)(1) of the Bankruptcy code on the ground of "for cause". (Motion, page 7, line 4-5)

Debtor submits there is not cause to lift the stay at this time and the motion is premature. Debtor further, submits that the balance of equities compels a denial of the Motion.

One of the primary purposes of the automatic stay is to give "the debtor a breathing spell form its creditors" and "permit "the debtor to attempt a repayment or reorganization plan'. Dean V, Trans World Airlines, Inc., 72 F.3d 754 (9th Cir. 1995); see also In re LPM Corp., 300 F.3d 1134, 1137 (9th Cir. 2002) (The automatic stay "grants the debtor breathing room and provides time to attempt reorganization.")

Section 105 of the Bankruptcy Code, entitled Power of Court, provides, in pertinent part:

"(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this time provided

for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." . . .

(d) The court, on its own motion or on the request of a party in interest, (1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and (2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically . ."

Unless the Court denies the Motion and OORA is enjoined from proceeding to close Debtor's operation, OORA's action would unduly impair reorganization jeopardize any recovery to the estate and its creditors, and causes imminent, irreparable harm to Debtor. These special and unusual circumstances exist warrant a denial of OORA's request and equitable relief to Debtor.

The bankruptcy court retains the power to enjoin the acts, if, under Section 105, the traditional factors favoring an injunction are present. (Legislative History "the effect of an exception is not to make the action immune from injunction. The court has ample other powers to stay actions not covered by the automatic stay . . .")

In the bankruptcy setting, the court balances the following factors: there be a danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize; second a reasonable likelihood of successful reorganization; a balance the relative harm as between the debtor and the creditor who would be restrained; and the public interest-public interest in successful bankruptcy reorganization and other societal interest. (In re Monroe Well Serv., Inc. 67 B.R. 746, 752-53 Bankr. E.D. Pa. 1986) In applying this standard it "is important to recognize that the four considerations are factors to be balanced and not prerequisites that must be satisfied . . . These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 963 F.2d 855, 859 (6th Cir. 1992)

(citations omitted) As a consequence, the overwhelming presence of one of the factors may lead a court to issue, or to deny, an injunction without a particularly strong showing on the others." American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 963 F.2d 855, 860 (6th cir. 1992) The balance of harms considers evidence as to whether creditor sought to be enjoined has other avenues to pursue relief, and the impact on that creditor by delay.

Debtor submits that the balance of equities weighs so heavily in Debtor's favor that the Court must exercise its equitable powers and deny OORA's expedited Motion. If the Motion is granted and Debtor required to surrender the Premises to OORA before Debtor's new facility is ready for occupancy and operation, would subject Debtor to imminent and potentially permanent closure, significant loss of its ongoing value, significant risk of falling out of compliance with outstanding contracts, loss of customers and employees, loss of the very existence of the business, layoff of employees, cancellation of existing contracts, refusal of potential new business, and severely jeopardize Debtor's ability to continue as an ongoing concern, put forth a confirmable plan of reorganization, and provide any recovery to creditors.

**IV. Conclusion:**

Debtor respectfully request the Court deny OORA's Motion or in the alternative provide Debtor with the opportunity for a full evidentiary hearing after expedited discovery.

                          CAMPEAU GOODSELL SMITH

                          /s/ William J. Healy
                          William J. Healy
                          Attorneys For Debtor