CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California 95112
Telephone: (408) 295-9555
Facsimile: (408) 295-6606

ATTORNEYS FOR Debtor
Integrated Packing Assembly Corporation
dba IPAC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: ) Case No. 07-53563 ASW
)
INTEGRATED PACKING ASSEMBLY ) CHAPTER 11
CORPORATION, dba IPAC, )
)
         Debtor. ) Date: June 26, 2008
) Time: 2:15 p.m.
) Place: United States Bankruptcy Court
)       280 S. First St. Room 3020
)       San Jose, CA 95113
)
) Judge: Hon. Arthur S. Weissbrodt
)
)

**OPPOSITION TO MOTIONS TO CONVERT CASE TO CHAPTER 7**

Debtor Integrated Packaging Assembly Corporation ("Debtor" or "IPAC") submits this opposition to the United States Trustee's Motion To Convert Case to Chapter 7 ("UST") ("UST Motion") and Creditor Old Oakland Road Associates, LLC's Motion To Convert Case To Chapter 7 ("OORA")("OORA Motion") as follows:

**I. Introduction And Summary Of Response.**

Debtor opposes the twin motions of the UST and OORA as an overly aggressive joint effort to grant litigation control to OORA in state court litigation between and among Debtor, OSE USA, Inc. ("OSE"), OORA, and Joseph Sully ("Sully") and punish Debtor for its responsible person's mis-statements, which were unilaterally corrected by Debtor and did

not cause any harm. Debtor submits, as it has previously, that this bankruptcy resulted from OORA's unwillingness to negotiate an extension of Debtor's occupancy, Debtor asserting its possessory and equitable rights to continue occupancy of the premises, Debtor asserting its rights relative to its contractual obligation to provide a premises for non-party i2a Technologies, Inc., trying to avoid claims and liabilities for its failure to comply with its contractual obligations, and the necessity of Debtor avoiding potential multiple competing claims for the same promissory note obligation. Debtor believes that the results of pending state court litigation may dictate Debtor's presentment of a plan of reorganization.

**II. Factual Background.**

    **A. History And Background Of Debtor's Business.**

Debtor is a valid California corporation. Victor Batinovich is Debtor's President, Chief Executive Officer, and Debtor's responsible person.

    **1. IPAC Delaware.**

In approximately 1993-1994, Integrated Packaging Assembly Corporation, Inc., aka IPAC, was incorporated in Delaware ("IPAC Delaware"). This corporation is not the Debtor! (Batinovich Deposition[1], page 13, lines 15-24) IPAC Delaware's original shareholders were, among others, Fred Adler, Bank of America Ventures, Cannon Ventures, and Mr. Batinovich (Batinovich Deposition, page 13, line 25-page 14, line 6). IPAC Delaware went public in approximately 1996-1997, operated at 2221 Old Oakland Rd., San Jose, CA ("Premises"), was subsequently sold to a Taiwan conglomerate, and at the time of the sale Mr. Batinovich separated from IPAC Delaware. (Batinovich Deposition, page 15, 11-page 16, line 11)

    **2. IPAC California.**

In approximately September 2003, Integrated Packaging Assembly Corporation, Inc., aka IPAC, was incorporated in California ("IPAC California" or "Debtor"). This corporation is the Debtor! (Batinovich Deposition, page 19, lines 9-19) . IPAC California was formed to

---

[1] Referenced pages to Mr. Batinovich's deposition are attached to the Declaration of William J. Healy jointly as Exhibit D.

purchase the assets of OSE USA, Inc. (or OSE Taiwan) ("OSE"), assets which were the same or similar assets as those purchased by OSE from IPAC Delaware. (Batinovich Deposition, page 19, line 20-page 20, line 4)

### a) Asset Purchase Agreement IPAC California and OSE.

In approximately September 2003, IPAC California entered into a series of agreements relating to the lease of the Premises and purchase of assets from OSE. Specifically, on September 4, 2003, IPAC California and OSE entered into a Lease Amendment whereby, inter alia, IPAC California would lease the Premises from its owner Sully pursuant to a new lease and IPAC California would operate at the Premises. (Declaration, William J,. Healy, Exhibit A) In September 2003, IPAC California and OSE entered into an Asset Purchase Agreement whereby OSE, as seller, sold to IPAC California, as purchaser assets of OSE's manufacturing business previously operated at the Premises. (Declaration, William J. Healy, Exhibit B) The stated purchase price was $1,000,000 consisting of $500,000 cash and $500,00 in the form of a Promissory Note. The Asset Purchase Agreement and the Promissory Note are the subject of a state court action between OSE, Debtor, OORA, Batinovich, and Sully (see below).

### 1. Tax Return Asset Valuations

Debtor's 2003 Federal Tax Return stated the value of all of assets (as opposed to solely the assets purchased from OSE[2]) at $1,270,477; Debtor's 2004, Federal Tax Return stated the value of all of its assets (as opposed to solely the assets purchased from OSE) at $1,103,160, and Debtor's 2005 Federal Tax Return stated a value of all of its assets (as opposed to solely the assets purchased from OSE) at $1,128,972.[3]

Simply, it appears the UST and OORA are suggesting an investigation is necessary to

---

[2] The State Action directly relates to OSE failure to provide all the assets address by the Asset Purchase Agreement.

[3] Debtor's stated Federal Tax Returns are not attached, but Debtor acknowledges the Declaration of Nanette Dumas (paragraph 11) correctly quotes the figures reflected in the actual returns produced by Debtor.

determine why in 2006 IPAC California sold assets to i2a Technologies, Inc. for consideration of approximately $1,317,000 when it purchased the same or similar assets from OSE less than three years earlier for $1,000,000 and the Debtor's Federal Tax Returns valued the total assets at an average (2003-2005) of $1,167,000. (Deposition Batinovich, page 68, line 9-page 71, line 16, page 71, line 17-page 73, line 20, and page 76, line 9-page 77, line 12; see also page 73, line 2-page 74, line 25)

### c) State Court Litigation Regarding The Asset Purchase Agreement And Promissory Note.

On January 12, 2007, OSE filed a complaint in state court against Debtor, and others, alleging, inter alia, breach of contract relating to, inter alia, an Asset Purchase Agreement and a Promissory Note in an action entitled <u>OSE USA, Inc. v. Integrated Packaging Assembly Corporation, et al.</u>, Santa Clara Superior Case No.: 1-07-CV-078151 ("State Action"). The State Action relates to and addresses claims by, at least, OSE and OORA to the Promissory Note. In addition, the State Action relates to and addresses claims by Debtor that OSE did not provide IPAC California with all of the assets covered by the Asset Purchase Agreement.

Currently OSE has an outstanding Complaint[4], IPAC California has answered and cross complained against OSE, OORA, and Sully for, inter alia, declaratory relief regarding the ownership of the Promissory Note. At this time OORA and Sully have been served with IPAC California's cross complaint but have not appeared or responded, as such responses are anticipated in the next two weeks.

### 3. i2a Technologies, Inc.

In May 2005, i2a Technologies, Inc. was incorporated in California with Mr. Batinovich as the majority shareholder. (Batinovich Deposition, page 20, line 14-page 21, line 4). On January 28, 2006, IPAC California and i2a Technologies, Inc. entered into an

---

[4]OSE recently also filed a Cross Complaint against Debtor, OORA, and Sully relating, in part, to the Asset Purchase Agreement and Promissory Note.

Asset Purchase Agreement as part of a three-way deal between IPAC California, i2a Technologies, Inc, and PTA, a Malaysian company, whereby IPAC California agreed to sell to i2a Technologies, Inc. its assets as they related to its manufacturing business (generally the same or similar assets purchased by IPAC California from OSE in 2003 and purchased by OSE from IPAC Delaware in approximately 1997). (Declaration, William J. Healy, Exhibit C)

The Asset Purchase Agreement provides that as part of a three way deal the total price was $750,000, IPAC California had borrowed $750,000 from PTA, PTA was obligated to compensate i2a Technologies, Inc. approximately $1,500,000 for the transfer of intellectual property and know how and the receipt of training and qualification assistance, and PTA's obligation to i2a Technologies, Inc. was reduced by $750,000. In addition, the Asset Purchase Agreement provided that IPAC California granted to i2a Technologies, Inc permission to operate at the Premises in exchange for i2a Technologies, Inc, agreeing to pay rents while at the Premises. In addition, IPAC California and i2a Technologies, Inc. also agreed that i2a Technologies, Inc. would pay IPAC California's accounts payable, approximately $547,598.76. Total consideration for this three way agreement was, as received by IPAC California, approximately $1,317,000. At the time, Debtor only secured creditor was Mr. Batinovich. (Deposition Batinovich page 68, line 9-page 71, line 16, page 71, line 17-page 73, line 20, and page 76, line 9-page 77, line 12; see also page 66, line 17-page 67, line 9 and page 73, line 2-page 74, line 25)

**4. IPAC California's Lease of The Premises.**

On or about September 1, 2003, Debtor entered into a lease of approximately 63,000 square feet at the premises of 2221 Old Oakland Road, San Jose, CA (the "Premises") from Sully. On or about October 10, 2006, OORA purchased the Premises, subject to Debtor's lease, from Great West Life & Annuity Company ("Great West"), the successor of Canada Life Assurance Company, which had acquired the Premises in foreclosure. The Lease was assigned to OORA by Great West pursuant to an Assignment And Assumption Of Leases.

Debtor's lease was for an original term through August 31, 2008. Shortly after OORA's purchase of the Premises, Debtor initiated state court litigation in great part, to the address the deplorable condition of the Premises, OORA's refusal and failure to maintain and repair the Premises, including but not limited to leaking ceilings, leaking floors, loose floor tiles, and inoperable air conditioning cooling units, and other facility equipment, and improperly demanded excessive rent. In response to Debtor's complaints and state court litigation, OORA initiated formal efforts to evict Debtor from the Premises. After months of litigation, Debtor and OORA entered into negotiations to resolve these issues. On July 26, 2007, a Memorandum of Settlement was executed whereby the Debtor would dismiss its state action, the Debtor would agree to entry of a judgment for possession of the Premises, Debtor could occupy the Premises through and including October 31, 2007, and OORA would not enforce the judgment of possession until November 1, 2007. This Memorandum of Settlement was reduce to a formal Settlement Agreement, executed on October 10, 2007 by Debtor and October 17, 2007 by OORA.

### 5. Debtor's Negotiations With OORA.

Over the few weeks prior to Debtor filing the petition for bankruptcy, at the instruction of Debtor, Debtor's counsel attempted to address and explain Debtor's situation with OORA. These efforts continued up through the evening of October 31, 2007, without any positive response from OORA.

Post petition, at the instruction of the Debtor, Debtor's counsel again attempted to address Debtor's current situation between moving out of the Premises. Until appearing before this Court and discussing the matter directly, these efforts did not receive any positive response from OORA.

### 6. Debtor's Petition For Chapter 11 Bankruptcy.

On October 31, 2007, Debtor filed an emergency voluntary petition under chapter 11 of Title 11 of the United States Code, commencing the instant action. As previously stated, the

petition resulted from OORA's unwillingness to negotiate an extension of Debtor's occupancy, Debtor asserting its possessory and equitable rights to continue occupancy of the premises, Debtor asserting its rights relative to its contractual obligation to provide a premises for non-party i2a Technologies, Inc., trying to avoid claims and liabilities for its failure to comply with its contractual obligations, and the necessity of Debtor avoiding potential multiple competing claims for the same promissory note obligation (as addressed in the State Action).

**III. Argument.**

    **A. Debtor Filed This Bankruptcy in Good Faith And Maintains It In Good Faith.**

At the time Debtor commenced this bankruptcy it had exhausted, even into the evening of the petition's filing, attempts to negotiate a resolution of this matter. The commencement of this bankruptcy was necessary for Debtor to maintain and assert its possessory and equitable rights to continued occupancy of the Premises (The lease may not be considered ended until the tenant has no legal recourse to revive the lease (Ross v. Metropolitan Dade County, 142 Bankr. 1013,(S.D. Fla. 1992, aff'd without op., 987 F.2d 774 (11th Cir. 1993) (leases considered terminated when both the lease termination process has been completed and no anti-forfeiture laws can still save the lease); In re Windmill Farms, Inc. 841 F.2d 1467, 1469 (9th Cir. 1988); and California Code of Civil Procedure Section 1179).

Further, at the time Debtor commenced this bankruptcy it was contractually obligated, by way of the IPAC California-i2a Technologies, Inc. Asset Purchase Agreement to provide i2a Technologies, Inc. permission to operate at the Premises and Debtor's failure to comply with its contractual obligation would expose Debtor to potential claims and liabilities. (Deposition Batinovich, page 78, line 9-page 79, line 9 and Declaration of William J. Healy, Exhibit C)

In addition, at the time Debtor commenced this bankruptcy it was involved in multiple litigation relating to the Asset Purchase Agreement, Promissory Note, and Premises and, in

particular, was subject to multiple competing claims by potential holder(s) of the Promissory Note.

Debtor maintains this bankruptcy in good faith. Debtor has cooperated and complied with UST requirements, cooperated and complied with OORA's 2004 examination request, worked with creditors towards resolving the various state court litigation matters, and been forthright with the Court regarding the status of the case and progress regarding a potential plan. In fact, Debtor was forthright with the UST regarding Debtor's consideration of dismissing this bankruptcy, litigating the competing claims before this court or before the state court, and moving forward depending on the results of the various state court matters. Debtor's counsel discussed the matter with the UST many months ago to explain Debtor's situation and course of action.

**1. Debtor's Plan Moving Forward Is Dependent On The Results Of The Pending State Court Litigation.**

Debtor's plan moving forward and exiting bankruptcy is greatly dependent on the results of the pending State Action. Debtor asserts it has substantive defenses to the Promissory Note due to OSE's failure to provide various equipment pursuant to the agreement, has remaining claims against OORA, should be entitled to attorneys fees relative to these defenses in the State Action, and submits that only one party, whether it be OSE, OORA, or Sully can be the holder of the Promissory Note. Therefore, Debtor should be entitled to attorneys fees and costs from the various claimants determined not to hold the Promissory Note.

**2. Debtor Believes Debtor's 'Name' Has Value And Is Worth Preserving.**

Debtor believes Debtor's 'name' has value and depending the results of the State Action may be worth preserving. IPAC, and the 'name' IPAC, was the first public traded company in this field and Debtor believes has a lot of associated good will, especially in Asia where the 'name' is recognized. (Deposition Batinovich, page 63, lines 1-8) IPAC Delaware, even OSE, and IPAC California have used the name IPAC successfully. Mr.

Batinovich, as Debtor's sole and primary secured creditor and founder of IPAC Delaware and IPAC California, may be willing to personally invest new monies into the Debtor to take advantage of the goodwill associated with the Debtor's 'name'. (Declaration of William J. Healy)

### B. Debtor's Mis-Statements Regarding Its Assets Resulted From Confusion And Did Not Cause Any Harm.

At all times Debtor has attempted to be truthful and straightforward to the Court, UST, and parties, recognizes Mr. Batinovich made various mis-statements in the initial stages of this bankruptcy, and recognizes these mis-statements were unilaterally acknowledged by Debtor on January 8, 2008 at the Debtor's Initial Debtor Interview, on January 16, 2008 at the Meeting of Creditors, on January 24, 2008 a copy of the Asset Purchase Agreement between IPAC California and i2a Technologies, Inc. was produced to the UST, and on January 25, 2008 updated schedules were filed on January 25, 2008. In addition, Debtor advised the UST that Debtor was attempting to secure additional information from its financial services provided Montgomery Financial, but was having ongoing difficulties.[5]

Debtor also submits OORA was aware i2a Technologies, Inc. operated from the Premises as the sign age on the Premises so indicated (Deposition Batinovich, page 68, line 38) and i2a Technologies, Inc. made the lease payments.

Further, Debtor's mis-statements have not resulted in any harm to any creditors. OORA received rent deposits for post-petition rent pursuant to an agreement between Debtor and OORA. The pendency of this Chapter 11 has not resulted in any harm or delay to any creditors.

### C. The Court Must Consider The Costs And Dislocation Caused By The Potential Appointment Of A Trustee.

---

[5] Debtor is still experiencing difficulties securing completed 2006 and 2007 tax returns from Montgomery Financial.

The Court must consider both the costs and the dislocation caused by such appointment and must balance the harm against the benefits of appointing a trustee. (Schuster v. Dragone, 266 B.R. 268, 271 (D.Conn. 2001)). In deciding whether to appoint a trustee under the "for cause" provision, the court's determination is limited to determining whether the requisite "cause" exists – in the form of fraud, dishonesty, incompetence or gross mismanagement of the debtor by its existing management. "Inasmuch as one would expect to find some degree of incompetence or mismanagement in most businesses which have been forced to seek Chapter 11 relief, the court must find something more aggravated than simple mismanagement in order to appoint a trustee." Ibid., at 272; In re 4C Solutions, Inc., 289 B.R. 354, 371 (Bktrcy.C.D.Ill. 2003) Debtor submits the same standard should apply to motions to convert.

**D. An Examiner Is More Cautious And Economical Than Conversion.**

Debtor submits that to the extent the Court is inclined to take action at this time, rather than at the conclusion of the pending State Action, appointment of an examiner is more economical than conversion and a more practical approach to investigate the UST's and OORA's concerns regarding the 2006 transfer of assets.

Appointment of an examiner is a cautious, intermediate procedure which is more economical than appointment of a trustee. In re Gilman Services, Inc., 46 B.R. 322, 328 (Bkrtcy.Mass. 1985). Absent waste or depletion of the estate, an examiner, rather than a trustee, or conversion, should be appointed to investigate the propriety of alleged pre-petition transfers from Debtor's estate. In re Mako, Inc., 102 B.R. 809, 814 (Bkrtcy.E.D.Okla. 1988). It has been held that failure to find the requisite "cause" was not an abuse of discretion where the court sought to protect creditors by directing appointment of an examiner, and by barring debtors from selling, transferring or encumbering any property without the examiner's consent. Schuster, supra, 266 B.R. at 273; G-I Holdings, supra, 295 B.R. at 511 (bankruptcy court's decision not to appoint a Chapter 11 trustee based on the as-yet-unproven allegations of self-interest of debtor's principal was not abuse of

discretion, where movants would have opportunity to test and ultimately resolve these allegations in other proceedings).

An examiner would be able to focus on the UST's and OORA's assertions that an independent party should investigate the January 28, 2006, Asset Purchase Agreement between Debtor and i2a Technologies, Incl. and the associated three way transaction between Debtor, i2a Technologies, Inc., and PTA.

As previously stated, it appears the UST and OORA[6], suggest an investigation regarding why in 2006 IPAC California sold assets to i2a Technologies, Inc. for consideration of approximately $1,317,000 when it purchased those same or similar assets from OSE less than three years before for $1,000,000, and when Debtor's Federal Tax Returns valued the total assets at an average (2003-2005) of $1,167,000.

Debtor submits that a qualified examiner should be able to promptly review, investigate, and evaluate the purported concerns and advise the Court accordingly and a Trustee, albeit generally less qualified and at more expense, would necessarily have to conduct the same review, investigation, and evaluation.

**IV. Conclusion.**

Debtor respectfully request the Court deny the UST's and OORA's motions to convert this case to a Chapter 7, or in the alternative, appoint an examiner to review, investigate, and report on the concerns regarding the 2006 Asset Purchase Agreement.

Dated: June 20, 2008    CAMPEAU GOODSELL SMITH

/s/ William J. Healy
William J. Healy
Attorneys For Debtor

---

[6] Debtor submits that OORA's intention are premised on securing tactical advantage over IPAC, and Mr. Batinovich, in the State Action relative to its claim as a (the) holder of the Promissory Note

**OPPOSITION TO MOTIONS TO CONVERT CASE TO CHAPTER 7**
11
Case: 07-53563    Doc# 103    Filed: 06/20/08    Entered: 06/20/08 11:35:43    Page 11 of 11